United States v. Hampton. Mr. Funes. Good morning, Your Honors. Freddie Funes for Appellant Shane Hampton. The government indicted Mr. Hampton on four counts and he was convicted on two counts. In count one, he was convicted for conspiring to commit offenses against the United States and in count two, he was convicted for conspiring to commit wire fraud. Count one needs to be reversed in part because the government did not provide sufficient evidence that the transaction at issue here dealing with crypto tokens was an investment contract as that term is defined by the Supreme Court's Howey decision. A related issue that sort of compounds this entire problem is that the jury instructions also failed to clarify when defining what investment contract was that any expectation of profit must be reasonable and that when something is basically the profits are market speculation, that is not enough to make that transaction an investment contract. Counts one and two should also be overturned based on the sufficiency of the evidence. There's just not enough evidence in the record beyond a reasonable doubt to conclude that Mr. Hampton conspired with anyone to commit wire fraud or to conspire to commit any act against the United States. May I ask you, on the definition of a security, I understood your argument in part to be a challenge to the constitutionality of the statutory provision that defines either an investment contract or whether it constitutes a security. Are you still maintaining that constitutional challenge or are you just saying in this case the court misapplied or misinterpreted the law? So that is one of our arguments though, you know, as the government raised and I think correctly it would be under plain error any a constitutional challenge which I think is difficult for us given that Howey is a Supreme Court opinion but I think part of our argument is simply just given the facts and the evidence in this case there's just not sufficient evidence to say the transaction that took place here is an investment contract if you apply Howey as interpreted by the Levin story Court of Appeals. In particular, you know, when we're talking about a investment contract under Howey you need something to that's there's an investment of money for a common enterprise with the expectation of profits to be derived solely from the efforts of others and this court has defined has interpreted that language has interpreted case law and basically what it says is all right any expectation of profits has to be it's an objective thing it's got to be reasonable and in the mutual benefits corporation case this court specifically held hey when the profits to be derived are purely market speculation that's not really a reasonable expectation of profits from the efforts of others you don't have just a investor speculation you have comments from co-conspirator saying telling potential investors you're gonna make good money back you're gonna see some returns on your investment isn't that more a direct comment from someone I guess trying to increase their number of investors as opposed to a random person seeing the market and saying this looks like a good opportunity yes your honor I looked at the that is correct that there is and I think the the government on pages 20 to 29 if it's briefed it sort of cite the evidence it believes shows that this is an investment contract but I think there and I agree that the record does show that there was for example I think mr. Cain went on telegraph telegram I forget the name of the application that he used and somebody's complaining that crypto assets were declining and he said don't worry we're providing a robust ecosystem for utility tokens but I think that what the gap is that there's nothing in the record showing that even if you did have a robust ecosystem of utility tokens that it would in any way sort of mean that you as somebody who owns a token would have any expectation for profit there's just this gap why are people buying these then what do you think this is it's not an investment so it I'm not saying it's not an investment but I don't think it's an investment that objectively and reasonably is all based on the efforts of others so for example if I bought a baseball card with the expectation that in 20 years it's gonna be worth more because the player is amazing or a messy jersey because you know people love messy and I think in 20 years the market is gonna increase and somebody's gonna want to buy that messy jersey for a lot more than what it's worth today there's no question that that's an investment on my part there's no question that I subjectively expect it to go up but the value of that jersey just like a value of a token here is completely not dependent on the efforts of others and so that is that is the argument I think that I'm making what if for for whatever reason many people thought that these were a good idea to buy I have a lot of a lot of choices in this industry but there was obviously an impression given at least that there was some kind of inherent value and you could use these and the company was creating this great ecosystem why why wouldn't that be enough to at least suggest that the efforts of this company would be enough oh yeah that's a good question your honor I mean the issue that and maybe I'm just not smart enough to come up with an actual explanation but the issue I am having is that true they were creating an ecosystem they are trying to say this is gonna be amazing this is gonna be wonderful but there just seems to be a gap between we have a wonderful ecosystem and this token is worth something now there's a gap but I'm not sure that that is a I'm not sure it's a legal gap so much as a gap in the appropriateness of someone's expectation about what these things can actually do well and that's sort of my point because I think the expectation has to be objective and it has to be reasonable and so I think if we take away sort of strip crypto tokens out of all the esoteric mystery of what a crypto token is and just substitute it in for something else like a like a beanie baby right if I have a beanie baby store and I'm gonna like I'm gonna like market these things it's gonna be amazing you buy a beanie baby we're gonna take this the top of the world I don't think anybody would say well just because I'm making those statements that this is some sort of investment no one no one's even asserting that those beanie babies have some independent purpose right I mean the the there was the suggestion that these tokens had some purpose and would be useful and I guess in some theoretical world a token could be useful but there's there's the idea that these would be useful ways to work in this ecosystem or whatever as opposed to these are gonna just sit there right that is correct your honor I agree with that that being said I think if you look at for example the and for the most part in our briefs and in the government briefs we've relied on district court opinions just because for whatever reason district court especially in San Francisco New York have dealt with this issue the most if you look at like for example the coinbase opinion or terraform opinion there were other trappings there for example in those I think they got the crypto assets and they pulled them together and they promised the participants of the pool that hey we will pay out some sort of profit that that's an investment contract right I mean I mean that's not anymore right if you could if you sold your beanie babies and also promised a profit I mean it's I don't think that example is any different is it well look I think with the beanie babies it would be if somebody was like hey if you provide me your beanie babies I will pull them together and whatever profits is earned I will manage and then provide to you I mean that is so you're basically relying on the efforts of the manager of the pool of the assets but here there's just really other than a very abstract promise that this ecosystem is going to do something there is really no particularity as to how these tokens will be profitable in fact if you look at the record is it was a false promise any different than a true promise I mean there are a lot of false promises made say by Enron but that doesn't mean that it wasn't a real like Enron shares weren't a real investment right well for sure I agree with that but I also think we got to be clear not to put the horse before the cart I mean the question is this is an investment contract and if it is an investment contract then are the promises made a violation of this as you know the Securities Exchange Act you still have to determine first is it an investment contract correct and I think if you look at the record to the best evidence the clearest evidence really is the testimony of the purchasers of the hydro token here who both basically said one used the word speculation and the other one said well the main reason I bought it was because other crypto was going up and was fairly I think they said very quickly going up in value and that is just pure market speculation which I think under the SEC versus Mutual Benefits Corporation case is not a reasonable expectation of profits see my time is running out your honor so about knowledge you say your client there was insufficient evidence to support his knowledge regarding this fraudulent scheme and yet his fingerprints arguably are all over the scheme I mean it was in close communication with the co conspirators he was the one who actually orchestrated the payments to the market maker so what is your argument in terms of there not being evidence that he was aware and actively participated in the scheme sure look I'm not up here saying there was no evidence and in fact I think the government industry to his credit did a very good job of explaining here are the specific communications in the slack channel where mr. Hampton actually did communicate did respond did talk about the hydro tokens I think our position is that if you look at those communications which aren't all of them I mean this the slack communications 56 pages long and if you go through it there's just days where mr. Hampton doesn't respond and there's some things being said in there where you're like wow you know somebody saw that it's kind of hard to say that they were not in on it but there's just days where you know clearly mr. Hampton does respond our position is that if you just look at those communications in which mr. Hampton did in fact respond it's not enough to create a reasonable inference that he agreed to participate in conspiracy my last question is what about the mistake of fact jury instruction the court found that just saying that you relied on counsel's advice to say you could hire a market maker is not the same as saying counsel told you you could engage in a fraudulent activity yeah our point on that is is and I agree I agree that he was not trying to raise a defensive counsel you know the council told him he could do this our argument there is just it's a very low burden I mean is that mr. Hampton's defense is just that he was very busy did not really review this things and was told by counsel originally that what they were doing was okay so he just in the back of his mind he wasn't looking with any sort of alacracity if that's the pronunciation of that word these these slack messages to see if there's something nefarious going on thank you your honors mr. Lieberman whenever you are ready good morning your honors may please the court Dave Lieberman for the state's sufficient evidence supports mr. Hampson's convictions no other reversible error occurred this court should affirm I'll start with the investment contract question I first want to emphasize the standard of review we're here on a jury verdict it is rule 29 and it is could a reasonable jury viewing the evidence at trial and inferences at trial in the light most favorable to the government find that the Howey investment contract definition is satisfied and the answer is yes for a number of the public statements that I think judge a Buddha your question referenced we tried to chart this out on pages 27 through 29 of the government's brief the company released a public development plan for the token the president went on the official hydro chat and touted the tokens future practical uses the company's effort to great the token into other platforms other computer applications at 40 where 40 platforms have implemented the token we have a plug-in for WordPress we're working on other plugins for other popular applications that is all evidence objective evidence released in to the public that a reasonable investor could credit and going to judge grants series of questions about linking those public statements to the tokens value or potential future value the jury could reasonably make the inference that as the token starts having practical uses connected to it as it becomes more popular demand increases and then price increases and not only could they make that inference at the government presented direct testimony in the record on this is document entry 276 page 161 that the mr. Chorleon the software developer of the token we asked mr. Chorleon if the token was going to be have legitimate value who was going to create that answer the company he continued because the value for the token would have come through demand to use the token through these different API's application programs and so it was contingent on the company closing deals with partners and different businesses to get them connected to the platform so not only isn't a reasonable inference we had testimony linking the tokens future development future expansion to other computer applications to its value and the jury was entitled to credit that testimony final point on this the jury was also entitled to credit the testimony of the two individuals who purchased the token to testify at trial we view their testimony little differently than defense counsel both of them testified they reviewed the development plan they inferred that the company was building out an ecosystem had a plan for the token the company had a development plan future ideas for the token this roadmap showed potential for the tokens development and growth so get this gets us right I think squarely into the definition of what is an investment contract under Howie a reasonable jury viewing all this evidence in a light most favorable to the government could easily conclude that the folks who purchased these tokens expected that any future profits or returns that they might see would have been based on the efforts of the company to develop the token it seems from your friend on the other side Mr. Funes that their argument seems to be it was so highly speculative that it couldn't have possibly been an investment contract so my response to that is the the division of the dividing line that this court identified in the mutual benefits Corp decision what is that speculation tethered to is it just to overall market trends like they dropped the token in and everybody thought maybe the tokens are going to go up I agree that is not an investment contract but does it fall on the side of the line where the speculation is tied to the tokens future growth practical uses by the company and we had evidence of that here and the jury was entitled to credit that so the government's views it's something that doesn't even arguably have independent use or value like say a meme coin that that wouldn't be wouldn't qualify as an investment contract because there's no there's no suggestion that that that someone's efforts are really putting value into that aside from kind of whatever speculation and hype there is I would agree with that your honor so just a token out there in the ether without anything else I struggle to see how we satisfy the how we test what if you what if there's a what if there's a really purportedly attractive cartoon right and you say this cartoon has value and I'm printing you know a million of them and everyone's gonna want one do you think that that do you think that that level of at least asserted value what I realize that that doesn't affect this but I'm curious how far the argument goes I think this would be a tough row to hoe for the government because we're missing what we have here and I think in the other cases which is efforts by the company to say whatever instrument we're talking about I'm going to develop it here are my development plans to build it out develop practical uses to increase its popularity so just having an instrument and copying it over and over and releasing it and saying you may like this it's really good I think that's a tough road a hoe for a jury to find the how we test satisfied isn't that one of the issues really that the jury heard about which is that they made an effort to in essence have fake purchasers right because they had a company that developed and was developing these bots that created like the illusion that the token had become more popular than in fact it was yes so what we have the deception which is sort of in the back room fake volume both inflating prices but at times deflating prices depending on what the tactic of the day was that's in the back room but in the front room or public facing statements are we're developing the token we're increasing it's done in connection with the plan I would call it the business plan but it's sort of like this is what our idea is for potential for the growth of this token correct this is the all of a piece all part of the same scheme if they had not had a a business plan or a development plan would you have been able to satisfy how we if we take out all of the public statements about the development plan there they just threw it out there I think I didn't have a I'm struggling to see how that would be sufficient evidence under how you of which a jury could credit so there is some sort of bright line test yes and it's a quick and going back to the old Fifth Circuit's decision in row which was binding on this court it's a question of fact for the jury the jury gets to decide is instructed on that dividing line and gets to decide which side does this scheme fall on and my point here today is that a reasonable jury viewing all the inferences and evidence in light most favorable to the government recently found that this was an investment contract in light of both the objective evidence of what the company and the co-conspirator were sort of shooting into the public space as well as they could credit testimony from the investors saying we relied on that we consulted and relied on the development plan and even even if they're even if they actually had no true intentions to create a usable product it's enough that they created the impression or attempted to create the impression among investors that it would be a valuable usable product right that's correct your honor the how we test is from the perspective of sort of the reasonable investor on the ground it is an objective test of course subjective motivations of people who actually invested in the token purchase the token are relevant to that objective inquiry but at bottom it is what would a reasonable investor perceive at the time of the scheme and I I can't recall do that the efforts the efforts to kind of the value don't have to be on the part of the person selling the item right it could be on the seller could be some third party I don't know what that I know that this is in some of the district court opinions and I can't they don't remember what those courts said but in our case this is the company and co-conspirators so it the third party question about is not really presented we didn't interesting but maybe not here yes okay the the other half of the sufficiency question is of course could a jury reasonably find that knowing involuntarily agreed to participate in market manipulation the slack channels which the court brought up with opposing counsel they could see on particular days mr. Hampton being fully engaged in this in the scheme consulting with and sometimes selecting the particular tactic that moonwalkers was going to engage in we've also cited evidence that the president of new moonwalkers his testimony that he told mr. Hampton about the bots features mr. Hampton then is on private messaging talks to co-conspirators and says I do think their bot is the best and that is additional evidence from which the jury could credit that mr. Hampton is aware of what moonwalkers is doing and in fact retained moonwalkers precisely to use their bot judge a booty you asked about the district court's denial of the mistake of fact instruction I want to just maybe bolster one point that in our answering brief for reversible error to occur for the denial of an instruction they would this court would have to assess whether the charge as given encompass the desired defense and the district court said like I'm not giving your mistake of fact instruction I don't think you've laid a factual foundation but the district court also made clear that the rest of the instructions adequately covered that issue and I'll stress the point what the elements of securities fraud and wire fraud required the jury to find that Hampton knew the unlawful purpose of the plan and willfully joined in it so to find mr. Hampton guilty the jury had to find that he knew about the moonwalkers price manipulation and knowingly entered an agreement with moonwalkers to engage in it and that is precisely why in closing the defense was allowed to argue the exact defense that I didn't know I was just searching for a legitimate market maker I thought moonwalkers was a legitimate company and I didn't have the knowledge required for these charged offenses so we don't think that the district court erred in any way in denying that a mistake of fact instruction there was absolutely no evidence or proffer put on of mr. Hampton subjective belief that all the chat suggested otherwise that he thought moonwalkers or recognized that moonwalkers was a market manipulator but even if the court somehow erred and denying that mistake of fact instruction the rest of the instruction allowed mr. Hampton to advance the same defense that he would have under his proposed charged and the mr. Hampton's expressly did so in closing argument there had been a number of other claims raised in this case I'll just pause to see if members of the court curious about the gain calculation I mean in this case and I don't want to conflate it with mr. Kane's argument which perhaps is a bit more robust because I don't think there's the concession that exists in this case but it does seem I mean we've just talked about how unpredictable this market this kind of cryptocurrency is and and then you've got bots that were used so we don't even know if we're talking about real investors or fake investors and yet you've got a 1.3 million dollar gain calculation here against him can you explain to me the government's position yes your honor I all the factual observations that you made we agree with in our true but we think that supports the district courts decision to find that actual loss was not reasonably could not be reasonably calculated in this setting so there were 5,000 plus purchasers of the token during the conspiracy period and as your honor just mentioned on top of all the actual trades there was a bot that was executing thousands of fake trades or spoof orders per minute overlaid on top of the actual trades the bot at times is artificially inflating price sometimes it was artificially deflating price and then all the records in this case go to one cryptocurrency market but price swings on one market could logically extend to price movements on another market where the token is and so we think that all that supports the district courts factual conclusion that it's really hard to calculate actual investor loss in this setting we're going to go to the gain as the alternative number and the district court here said based on what I've seen seen the gain is likely to be a more favorable number for the defense than if I could somehow calculate the loss in this is a factually a factual question pertaining to the record so it's hard for me to see in this case the district judge who preceded over the presided over this trial made a fact a factual error up here on clear error and say in determining that actual loss in light of all the complexities that your honor has cited it's just so hard to calculate here I'm going to use the alternative measurement unless the court has any further questions the government asked that at a firm thank you your honors thank you mr. Funas you've reserved four minutes so I think the takeaway I is and I don't think the government's ever argued this and I and I would agree that the tokens by themselves are not investment contract and so the question is what else do you need to make a transaction that involves crypto tokens an investment contract under how and there is there's got to be a line right so for example if like in coinbase there's a specific application that the crypto token is using and the person's like hey this application is gonna make these tokens the most you know like the one token in the world you need to get this that is didn't they suggest didn't they suggest that these tokens were going to be useful yes they did but it's one but but that's sort of what I'm saying on the other hand if they're just like our tokens are gonna be the best tokens in the world is that enough to make a transaction investment contract and I would profit that it is not and here we are closer to that there is no direct application there is no explanation of what these tokens can be used for real there will be used for judge grant to your point you know NFTs I mean those are crypto tokens they have an application they for whatever reason back in the day people were paying a lot of money for these unique links and now they're worthless because the market speculation went away and so I do think there is a line between and inside of the line it's just not good enough to be an investment contract it's just not a what matters for the profits to be earned is market speculation not the efforts of other and I think we're on that side of the line given the amount of evidence here which is just sort of grandiose statements of like this is gonna be the best ecosystem for utility tokens and in contrast you know even even the witnesses themselves said to a large part the reason I got these tokens were because the crypto markets were hot on I think just grant you asked about other parties I agree with it with the government here if you I think if you look at documentary 122 the jury instructions specifically define the efforts as being the efforts of hydrogen technology or any of its co-conspirators on the us the Tyler Austin issue I just I disagree with the government if you read his testimony he did not say that he showed mr. Hampton the bot he did that first then he sort of backtracked then he said I don't really know if it was him who I showed it to I did show it to the team but I don't know who was there when I showed it to them then they asked him well did you explain what it was that the bot could do that I could do these before order so these wash trades and he said I believe so so it's it's not clear at all that Austin did specifically say I showed mr. Hampton what this pot could do the only real evidence of any role or any knowledge that mr. Hampton would know about the conspiracy comes from the slack messages in which he responded and talked to the other members of moonwalkers and hydrogen corporation and there's a bunch of other issues but we will rest on our breeze unless the court has any other questions I hope we respectfully request that accounts wanted to be reversed or remanded for a new trial thanks very much